IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN DOE, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 19-cv-6-SMY |
| vs. | )<br>) |
| DONALD J. TRUMP, in his official capacity as President of the United States, MATTHEW WHITAKER, in his official capacity as Acting Attorney General of the United States, and THOMAS E. BRANDON, Acting Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Plaintiff John Doe's Motion for Preliminary Injunction (Doc. 15). Plaintiff moves to enjoin enforcement of the Department of Justice's Final Rule, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ("Final Rule") as applied to Plaintiff and other individuals who possessed a bump stock on or before December 18, 2018. The Government opposes the Motion (Doc. 18). For the following reasons, the Motion is **DENIED**.

## Background

Congress began regulating machine guns with the passage of the National Firearms Act of 1934 (the "NFA"). *See* 26 U.S.C. § 5845(b). The NFA defines a machine gun as "any

weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger". *Id.* Also included within the scope of the definition are "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." § 5845(b). Relatedly, it is generally unlawful for any person to transfer or possess a machine gun, under the Firearm Owners Protection Act of 1986 ("FOPA"). 18 U.S.C. § 922(o).

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has issued multiple rulings in response to requests to classify bump stock devices. Applying the "single pull of the trigger" interpretation, ATF declined for years to classify bump stock models that did not include an internal spring as "machine guns". *See* 83 Fed. Reg. at 66517. The agency reasoned that although standard bump stock devices allowed a shooter to fire multiple rounds with a single pull of the trigger, they did not operate "automatically" because the devices did not rely on internal springs or other mechanical parts to channel recoil energy. 83 Fed. Reg. at 66517. Following the 2017 Las Vegas mass shooting, Congress urged the ATF to re-examine the classification of bump stock devices like the one used in the attack. In December 2018, ATF reversed its earlier position on bump stocks and concluded that a standard bump stock device is a "machine gun" as defined in the NFA "because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger" 83 Fed. Reg. at 66515.

The Department of Justice ("DOJ") issued the Final Rule at issue in this case to ensure that "bump stocks" are not used to circumvent 18 U.S.C. § 922(o). A bump stock is a device used to replace the standard stock on an ordinary semi-automatic firearm allowing a shooter to use the weapon at a rate of fire similar to that of an automatic weapon, like a machine gun. *See* 83 Fed. Reg. at 66516. More specifically, "when a bump stock-type device is affixed to a semiautomatic firearm, the device harnesses and directs the firearm's recoil energy to slide the firearm back and forth so that the trigger automatically re-engages by 'bumping' the shooter's stationary finger without additional physical manipulation of the trigger by the shooter." *Id.*

The Final Rule, which went into effect on March 26, 2019, interprets portions of the statutory definition of a machine gun. First, the Final Rule interprets the phrase "single function of the trigger" to mean "single pull of the trigger." *Id.* at 66518. It also interprets the term "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." *Id.* at 66519. Thus, the Final Rule clarifies that the term "machine gun" extends to devices like bump stocks that permit a semiautomatic weapon to shoot more than one shot with a single pull of the trigger "by harnessing the recoil energy" "so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." *Id.*

Plaintiff challenges the Final Rule's classification of bump stocks as machine guns under § 922(o). He asserts that § 922(o) does not prohibit an initial registration or amnesty period for newly regulated bump stock devices, despite a finding to the contrary by the DOJ and ATF. Further, he alleges Defendants have acted arbitrarily, capriciously, and contrary to law in finding they lack authority to institute an amnesty or initial registration period, and that

such an interpretation of § 922(o) is unconstitutional. Plaintiff lodges both facial and "as applied" constitutional challenges to the interpretation.

## Standard of Review

"A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). "It is never awarded as a matter of right." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). "To determine whether a situation warrants such a remedy, a court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts*, 549 F.3d at 1085–86. To survive the threshold phase, a party seeking a preliminary injunction must show that: (1) absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) its claim has some likelihood of succeeding on the merits." *Id.* If the moving party satisfies each of these requirements, the court "proceeds to the balancing phase of the analysis where it weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.*

## Discussion

Plaintiff asserts that irreparable harm is certain absent a preliminary injunction because his options are to either face criminal prosecution if he retains his bump stock devices or voluntarily destroy the devices (including relevant evidence that will support his Fifth Amendment Takings claim). As an initial matter, Plaintiff's Takings Clause assertion is

incongruent to the preliminary injunction analysis. *See Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n of Wisconsin*, 95 F.3d 1359, 1369 (7th Cir. 1996) (noting that a plaintiff would be hard pressed to demonstrate either irreparable harm or inadequate remedy at law for a takings claim because the Clause requires the state to pay just compensation when it exercises its power of eminent domain and in most cases this just compensation will take the form of money to compensate a property owner for a physical invasion). The remedy for any alleged taking is monetary relief.

Regarding the likelihood of success on the merits, while Plaintiff concedes the Final Rule's conclusion that a bump stock is a machine gun is correct, he asserts that this lawsuit "simply challenges the official interpretation of a statute." He maintains that he "may win or may lose" and cites 3 court orders to support his contention that his chances of success are "substantially more than 'negligible.'"

Plaintiff first cites *United States v. Vest*, 448 F.Supp.2d 1002 (S.D. Ill. 2006). In *Vest*, a state trooper was indicted and later prosecuted for possession of a machine gun under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(b) and (d). *Id.* at 1005. In moving to dismiss the indictment, the defendant argued that he fell under the "law enforcement exception" in § 922(o)(2)(A), a provision which establishes an exception to the prohibition against possession of a machine gun where the weapon is possessed "under the authority of, the United States or any department or agency thereof, or a State, or a department, agency, or political subdivision thereof." *Id.* at 1008. The defendant claimed the law enforcement exception was unconstitutionally vague as applied to him because it was unclear what "authority" would permit any law enforcement officer to possess a machinegun owned by the state police. *Id.* at 1004, 1005–06. The court held that § 922(o)(2)(A) was unconstitutionally vague as applied to

the defendant due to the lack of guidance as to what "authority" was proper. In so holding, it explained the fact the Government had to clarify a subset of police officers who would *not* be prosecuted under the statute bolstered the assertion that § 922(o)(2)(A) allows for arbitrary enforcement because it allows the prosecution to essentially define the criminal behavior.

The law enforcement exception considered by the *Ves*t court is not at issue in this case. And, Plaintiff does not connect the dots between the application of the vagueness doctrine to the law enforcement exception of § 922(o)(2)(A) and his likelihood of prevailing on the merits in this case. The issue is Plaintiff's challenge to the constitutionality of the Final Rule concerning the classification of bump stocks as machine guns under § 922(o) and whether Defendants have acted arbitrarily, capriciously and contrary to law in finding that they lack authority to institute an amnesty or initial registration period for machine guns. Plaintiff fails to raise any meaningful argument demonstrating even a negligible likelihood that he will succeed on the merits of his asserted claim.

Plaintiff cites two additional cases in support of his Motion – *Aposhian v. Barr*, No. 19-4036 (10th Cir. 2019) and *Guedes v. ATF*, No. 19-5042 (D.C. Cir. 2019) – neither of which supports his request for a preliminary injunction. In fact, every court to address the issue – faced with more robust arguments than Plaintiff advances – have denied motions for preliminary injunctions, finding the plaintiffs could not demonstrate a likelihood of success on the merits. *Aposhian v. Barr,* 374 F. Supp. 3d 1145 (D. Utah 2019) ("[The plaintiff] has not carried his burden of showing a substantial likelihood of success on the merits. As a result, his motion for a preliminary injunction must be denied."), *appeal docketed*, No. 19-4036 (10th Cir. Mar. 18, 2019) (denying temporary injunction pending appeal); *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,* 356 F. Supp. 3d 109 (D.D.C. 2019), *aff'd* 920 F.3d

1 (D.C. Cir. 2019) ("None of the plaintiffs' challenges merit preliminary injunctive relief.");  *Gun Owners of Am. v. Barr,* 363 F. Supp. 3d 823 (W.D. Mich. 2019) ("The Court concludes that Plaintiffs have not demonstrated a likelihood of success on the merits of their APA challenges to ATF's Final Rule.  With this determination, Plaintiffs' motion for a preliminary injunction will be denied.").

A preliminary injunction is an extraordinary and drastic remedy requiring the movant to demonstrate its justification by a clear showing.  Plaintiff fails to clear this hurdle, and the Motion is **DENIED**.

**IT IS SO ORDERED.**

**Dated:  April 22, 2020**

**STACI M. YANDLE**
**United States District Court Judge**