**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JOHN DOE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-6-SMY |
| vs. | ) ) | |
| DONALD J. TRUMP, in his official capacity as President of the United States, MATTHEW WHITAKER, in his official capacity as Acting Attorney General of the United States, and THOMAS E. BRANDON, Acting Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Following the 2017 Las Vegas mass shooting, Congress urged the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to re-examine the classification of bump stock devices.  In response, the Department of Justice issued a Final Rule, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ("Final Rule").

Plaintiff John Doe filed the instant putative class action on behalf of himself and similarly situated persons, claiming the Final Rule exceeds ATF's statutory authority and violates the Administrative Procedure Act ("APA") and the Constitution.  Doe asserts the following causes of action in the Complaint:

Count I:       18 U.S.C. 922(o) does not prohibit an initial registration period/amnesty;

Count II:      18 U.S.C. 922(o) is facially unconstitutional as being in excess of the authority granted to Congress under the Commerce Clause;

Count III:     18 U.S.C. § 922(o) is unconstitutional as applied to firearms registered in the National Firearms Registration and Transfer Record as being in excess of the authority granted to Congress under the Commerce Clause;

Count IV:      18 U.S.C. § 922(o) is an unconstitutional direct tax in violation of Article I of the Constitution;

Count V:       18 U.S.C. § 922(o) is a violation of the Due Process Clause; and

Count VI:      The Final Rule is a Taking requiring just compensation.

This case is now before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. 43). Doe opposes the motion (Doc. 48). For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

## Factual Background

### Statutory Framework

Congress regulates firearms through three statutes: The National Firearms Act of 1932 ("NFA"), codified as amended at 26 U.S.C. §§ 5801–72; the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, 82 Stat. 1213; and the Firearm Owners Protection Act of 1986 ("FOPA"), Pub. L. 99-308, 100 Stat. 449. The NFA was enacted pursuant to Congress's taxing authority; it imposes a tax on the manufacture and transfer of firearms and establishes registration requirements. *See* 26 U.S.C. §§ 5801–41. Under the GCA, it is a criminal offense for anyone except for licensed importers, manufacturers, dealers, or collectors to transport machineguns "except as specifically authorized by the [Attorney General] consistent with public safety and necessity." GCA § 102 (amending 18 U.S.C. § 922). The FOPA amended the GCA to further restrict access to machineguns, making it "unlawful for any person to transfer or possess a machinegun" not lawfully possessed before FOPA's enactment. FOPA § 102 (amending 18 U.S.C.

§ 922(o)).  Under the FOPA, after May 19, 1986, newly manufactured machineguns are available only to the United States government (such as the military) and law enforcement entities. Drawing upon the definition of machinegun found in the NFA, the FOPA defines the term as follows:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled, if such parts are in the possession or under the control of a person.

See 26 U.S.C. § 5845(b); see also 27 C.F.R. 478.11; 479.11.  Congress granted the Attorney General the authority to promulgate rules and regulations necessary to enforce the provisions of all three statutes.  See 26 U.S.C. § 7805(a); 18 U.S.C. § 926(a).  The Attorney General in turn delegated the authority to the ATF.  See 28 C.F.R. § 0.130.

### The Final Rule

A bump stock replaces the standard stock on ordinary semi-automatic firearms, allowing a shooter to use the weapon at a rate of fire similar to automatic weapon or machinegun.  See 83 Fed. Reg. at 66516.  More specifically, "when a bump stock-type device is affixed to a semi-automatic firearm, the device harnesses and directs the firearm's recoil energy to slide the firearm back and forth so that the trigger automatically re-engages by 'bumping' the shooter's stationary finger without additional physical manipulation of the trigger by the shooter."  Id.

Historically, ATF has issued multiple rulings in response to requests to classify bump stock devices.  Applying the "single pull of the trigger" interpretation, for years ATF declined to classify bump stock models that did not include an internal spring as "machineguns".  See 83 Fed. Reg. at 66517.  The agency reasoned that although standard bump stock devices allowed a shooter to fire

multiple rounds with a single pull of the trigger, they did not operate "automatically" because the devices did not rely on internal springs or other mechanical parts to channel recoil energy.  83 Fed. Reg. at 66517.

Following the 2017 Las Vegas mass shooting, Congress urged the ATF to re-examine the classification of bump stock devices.  The DOJ published an advance notice of proposed rulemaking ("ANPRM") in the Federal Register.  *See* AR000773 (*Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices*, 82 FR 60929 (Dec. 26, 2017)). The ANPRM posed a set of questions directed to manufacturers, consumers, and retailers regarding the cost of bump stocks, the number of sales, the cost of manufacturing, and input on the potential effect of a rulemaking prohibiting bump stocks.  *See* 83 FR 60930-31.  Public comment on the ANPRM yielded 115,916 comments.  *Id.* at 60929; *see* AR00198.

DOJ subsequently published a notice of proposed rulemaking ("NPRM") setting forth changes to the regulations in 27 C.F.R. §§ 447.11, 478.11, and 479.11 pertaining to the meaning and interpretation of the terms "single function of the trigger" and "automatically."  *See* AR001238, *Bump-Stock-Type Devices*, 83 FR 13442 (Mar. 29, 2018).  DOJ received over 186,000 comments on the NPRM, 83 FR 66519; *see* AR002121.  In December 2018, the DOJ published the Final Rule for the stated purpose to ensure that "bump stocks" are not used to circumvent 18 U.S.C. § 922(o).

The Final Rule, which went into effect on March 26, 2019, interprets portions of the statutory definition of a machinegun.  First, it interprets the phrase "single function of the trigger" to mean "single pull of the trigger."  *Id.* at 66518.  It also interprets the term "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger."  *Id.* at 66519.  Thus, in the Final Rule, ATF reversed

its earlier position on bump stocks and concluded that a standard bump stock device is a machinegun as defined in the NFA "because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." 83 Fed. Reg. at 66515.

## Standard of Review

Summary judgment is "a mechanism for deciding, as a matter of law, whether agency action passes muster under the Administrative Procedure Act. *See Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009). A court must set aside an agency determination if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it is "unsupported by substantial evidence." *Orchard Hill Bldg. Co. v. United States Army Corps of Engineers*, 893 F.3d 1017, 1024 (7th Cir. 2018) (quoting 5 U.S.C. §§ 706(2)(A), (E)).

An agency determination is arbitrary and capricious if it "runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016). A determination is unsupported by substantial evidence when the record lacks evidence that "a reasonable mind might accept as adequate to support the conclusion." *Id.*

The scope of review is "narrow and a court must not substitute its judgment for that of the agency." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012). In other words, a "reviewing court should not attempt itself to make up for ... deficiencies" in an agency's reasoning, nor "supply a reasoned basis for the agency's action that the agency itself has not given." *Zero Zone*, 832 F.3d at 668. The party challenging the agency action bears the burden of proof. *See, Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995); *see also Constr. & Design Co. v. U.S. Citizenship & Immigration Servs.*, 563 F.3d 593, 596 (7th Cir. 2009).

## Discussion

Here, Doe asserts that the Final Rule is unlawful on its face and as applied to him as a bump stock owner.  He alleges that 18 U.S.C. § 922(o) does not prohibit an initial registration or amnesty period for newly regulated bump stocks and that Defendants have acted arbitrarily, capriciously, contrary to law, and in violation of the Constitution by concluding they lack authority to institute an amnesty or initial registration period.  He also challenges the constitutionality of the federal prohibition on machineguns.  Defendants argue that each of Doe's claims is subject to summary dismissal.

### Registration/Amnesty Period Claim (Count I)

Doe contends Defendants have abused their discretion and acted arbitrarily and capriciously by failing to enact an amnesty period to allow current bump stock owners to register their devices under the NFA.  He cites § 207(d) of the 1968 Amendments to the NFA to support his assertion that the ATF has authority to grant amnesty for bump stocks.  Section 207(d) provides:

> The Secretary of the Treasury, after publication in the Federal Register of his intention to do so, is authorized to establish such periods of amnesty, not to exceed ninety days in the case of any single period, and immunity from liability during any such period, as the Secretary determines will contribute to the purposes of this title. Pub. L. 90-619, 82 Stat. 1236.

But, as the Final Rule explains, although "in 1968 Congress left open the possibility of future amnesty registration of firearms subject to the NFA, ATF has long held that it eliminated any possible amnesty for machineguns in 1986 following the passage of 18 U.S.C. § 922(o)." *See* 83 FR 66536.  Since its passage in 1986, ATF has interpreted § 922(*o*) to ban private possession or transfer of new machineguns not lawfully possessed before the statute's effective date. Consequently, ATF will not approve applications to register new weapons because to do so would

place the applicant in violation of the law. *See* 83 FR 66514-01 (advising industry and public that amnesty registration of machineguns is not legally permissible); 27 C.F.R. § 179.105. And courts have held that there is no authority to provide amnesty for machineguns because the intent of § 922(o) was to limit transactions in post-1986 machineguns – effectively freezing the number of legal machineguns in private hands at its 1986 level. *See Farmer v. Higgins,* 907 F.2d 1041 (11th Cir. 1990), *cert. denied,* 498 U.S. 1047 (1991) (rejecting the district court's holding that § 922(o) did not prohibit private possession of machineguns if the owner complied with the NFA's registration requirements and agreeing with ATF's interpretation that § 922(o) prohibits the private possession of machineguns not lawfully possessed prior to May 19, 1986); *United States v. Kenney,* 91 F.3d at 891; *United States v. Aiken,* 974 F.2d 446, 449 (4th Cir. 1992); *United States v. Warner,* 5 F.3d 1378, 1381 (10th Cir. 1993).

Here, Doe concedes that a bump stock is a machinegun (Doc. 15, p. 6) ("In this case, Doe does not take issue with the fact that a bump stock is a "machinegun". While certainly questionable whether the drafters of the term used in the U.S. Code ever envisioned a device like a bump stock, [f]or purposes of this litigation, Doe has already conceded the point").[1]  And an amnesty period would clearly violate § 922(o)'s prohibition on machineguns. As such, the administrative record

---

[1] Although conceding that a bump stock is a machinegun, after briefing was completed, Plaintiff filed a Motion to Cite Supplemental Authority (Doc. 61) citing the Sixth Circuit's decision in *Gun Owners of Am., v. Garland*, 992 F.3d 446 (6th Cir. 2021) for the proposition that a bump stock cannot be construed as a statutorily defined machinegun. In *Garland*, the Sixth Circuit held that a bump stock does not fall within the statutory definition of a machine gun because a bump stock does not cause a firearm to fire more than one shot by a single function of the trigger. *Garland*, 992 F.3d at 473. The *Garland* Court noted that it's interpretation was a minority view "[although it] disagree[d] with the ATF's position, the ATF prevailed before the Tenth Circuit, as well as the D.C. Circuit Court, from which decision the Supreme Court denied certiorari." *Id*. at 474, citing *Guedes*, 920 F.3d at 6, *cert. denied* —— U.S. ——, 140 S. Ct. 789, 206 L.Ed.2d 266 (2020). The Sixth Circuit recently vacated the *Garland* decision and has granted a hearing *en banc*. *See Gun Owners of Am., Inc. v. Garland*, 2 F.4th 576 (6th Cir. 2021).

and legislative history support ATF's interpretation which is neither arbitrary nor capricious. Accordingly, summary judgment in Defendants' favor is warranted on Count I.

### Commerce Clause (Counts II and III)

Doe contends that the statutory ban on machineguns in § 922(o) exceeds Congress' authority under the Commerce Clause because the possession of a machinegun is not a channel or instrumentality of commerce nor is it an activity that has a substantial effect on interstate commerce.

The Supreme Court has identified three general categories of regulation in which Congress is authorized to engage under its commerce power: "the channels of interstate commerce"; "the instrumentalities of interstate commerce, and persons or things in interstate commerce"; and "activities that substantially affect interstate commerce."  *Gonzales v. Raich,* 545 U.S. 1, 16-17 (2005)*; see also United States v. Lopez,* 514 U.S. 549, 558 (1995).  Within the scope of the first two categories, Congress may regulate or protect actual interstate commerce.  The third allows Congress to regulate intrastate noncommercial activity based on its effects.

In *Raich*, the Supreme Court analyzed whether a statute regulating intrastate economic activity was substantially related to interstate commerce and determined that an activity involving a commodity for which there is an interstate market has a substantial relation to interstate commerce if Congress had a rational basis to conclude that "failure to regulate that class of activity would undercut the regulation of the interstate market in the commodity." *Raich,* 545 U.S. at 18.

Although the Seventh Circuit has not specifically addressed the constitutionality of § 922(o) under *Raich*, it previously noted that "both the nature of the statute and the history of federal firearms legislation support the conclusion that § 922(*o*) is a constitutional exercise of Congress's Commerce Clause power." *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996).  The court

reasoned that the possession of a machinegun, because of its relation to the closely regulated interstate market in machineguns, cannot be considered purely local or noncommercial. *Id*.

Some courts have applied the *Raich* analysis and concluded that § 922(o) is a proper use of Congress' commerce clause power. *See United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006) (holding that § 922(o) is constitutional under the Commerce Clause because Congress had a rational basis for concluding that in the aggregate, possession of homemade machineguns could substantially affect interstate commerce in machineguns); *see also Montana Shooting Sports Ass'n v. Holder,* 727 F.3d 975 (9th Cir.2013); *accord United States v. Rene E.,* 583 F.3d 8 (1st Cir. 2009), *United States v. Rose,* 522 F.3d 710 (6th Cir. 2008); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136 (3d Cir. 2016).

This same analysis has been applied repeatedly to uphold § 922(o) and other federal statutes regulating the market for dangerous items. *See United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003) (statute prohibiting felons from possessing firearms); *United States v. Sweet*, 548 F.2d 198 (7th Cir. 1977) (statute prohibiting unlawful use of explosives in intrastate activity); s*ee also United States v. Kirk*, 105 F.3d 997, 998 (5th Cir. 1997) ("Every circuit that has examined 18 U.S.C. § 922(o)—both before and after *United States v. Lopez* ...—has determined that § 922(*o*) does not exceed the authority granted to Congress by the Commerce Clause."); *United States v. Rybar,* 103 F.3d 273 (3rd Cir. 1996) (upholding § 922(o) under the third category of activity that Congress may regulate under the Commerce Clause, as it regulated activities having a substantial effect on interstate commerce); *United States v. Beuckelaere,* 91 F.3d 781 (6th Cir. 1996); *United States v. Wilks,* 58 F.3d 1518 (10th Cir. 1995).

Doe offers the Court no basis to differentiate his commerce clause claims from those rejected by numerous courts.   Thus, consistent with well-reasoned rulings upholding the constitutionality of § 922(o), Doe's facial and as-applied challenges to the NFA and § 922(o) fail; Defendants are entitled to summary judgment on Doe's commerce clause claims.

## Direct Tax Claim (Count IV)

Next, Doe maintains that § 922(o) and the NFA represent an unconstitutional direct tax in violation of Article I of the Constitution, which grants Congress the power to lay and collect taxes.[2] As an initial matter, § 922(o) does not impose any tax.  Rather, the Government prohibits the registration of machineguns (and now bump stocks) covered by § 922(o) and will not accept the tax that would otherwise be required by the registration requirements of the NFA[3].

Further, the regulation of machineguns is not a direct tax – it is permissible as an excise tax under Congress' authority to levy taxes.  *See* S*onzinsky v. United States,* 300 U.S. 506, 514 (1937) (federal statute imposing annual license tax on firearms dealers is within the national taxing power); *United States v. Copus*, 93 F.3d 269, 275–76 (7th Cir. 1996) (Congress' power to tax justifies the registration and taxing provisions of the NFA).  For these reasons, Defendants are also entitled to summary judgment on Doe's direct tax claim.

---

[2] Article I of the Constitution contains two direct tax provisions, which do not constrain Congress' authority to levy direct taxes, but rather, require that direct taxes be proportionate to state population.  Article I, section 2, clause 3 provides that "direct Taxes shall be apportioned among the several States.  according to their respective Numbers." U.S. Const., art. I, § 2, cl. 3.  The Constitution elaborates in article I, section 9, clause 4, explaining that "[n]o Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." *Id*. art. I, § 9, cl. 4.

[3] The NFA includes three indirect excise taxes that apply to firearms importing, making, or manufacturing: (1) under 26 U.S.C. § 5801, firearms importers, manufacturers, and dealers are required to pay an annual special occupational tax ("SOT") of either $500 or $1000; (2) any time a firearm is transferred, the transferor must pay a transfer tax of $5 or $200 pursuant to § 5811; and (3) pursuant to § 5821, a making tax of $200 is required each time a person makes a firearm.

**Due Process Claim (Count V)**

Doe argues that the NFA and § 922(o) violate the Due Process Clause because the statutes are not enforced equally as to all classes of persons and are therefore void for vagueness (Doc. 1, pp. 18-19). He also contends the statutes are enforced on "an ad hoc and subjective basis" – allowing Defendants to change their mind on the interpretation of what constitutes an NFA firearm and forcing innocent possessors to come into compliance with the constantly shifting rules. *Id.* at p. 20.

The Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591 (2015). A federal statute is entitled to a strong presumption of validity unless it (1) infringes upon a fundamental right or (2) involves suspect classifications. *Vacco v. Quill,* 521 U.S. 793, 799 (1997). Absent an infringement of a fundamental right, or the involvement of a suspect classification, a "legislative classification or distinction" will survive an equal protection challenge so long as it bears some rational relation to a legitimate end. *Romer v. Evans,* 517 U.S. 620, 631 (1996).

Doe is not a member of a suspect class, nor does he have a fundamental right to the possession of a machinegun. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (machineguns are the kinds of dangerous and unusual weapons not protected by the Second Amendment). Therefore, a rational basis standard applies to his due process claim and the Court will not invalidate the statutes at issue "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only

conclude that the government's actions were irrational." *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 83–84 (2000).

Section 922(o) prohibits machineguns with limited exceptions for law enforcement and those lawfully possessed prior to May 1986.  18 U.S.C. § 922(o)(2)(A), (o)(2)(B).  In enacting the prohibition, Congress found that limiting "the number of machine guns in private hands," including those used for intrastate activity, was necessary to address problems regarding interstate firearms trafficking.  *See Kenney,* 91 F.3d at 890–91.

There is nothing irrational about Congress differentiating between machinegun possession by law enforcement and possession by civilians.  As the Final Rule notes, Congress provided this exemption because it recognized the necessity of military and law enforcement to continue to use and possess machineguns.  *See* 83 FR 66514, 66520.  Prohibiting Doe, a civilian, from possessing a machinegun and therefore, a bump stock does not run afoul of the equal protection clause. Defendants are therefore entitled to summary judgment on Count V.

### Unconstitutional Taking Claim (Count VI)

The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use without just compensation."  U.S. Const. Amend. V.  When a plaintiff alleges a physical taking, the nature of the Government's action is critical.  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488 (1987).  For example, numerous federal cases have authorized the taking or destruction of private property in the exercise of the state's police power without compensation.  *See Mugler v. Kansas*, 123 U.S. 623, 669 (1887) ("The exercise of the police power by the destruction of property which is itself a public nuisance ... is very different from taking property for public use.... In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner."); *Keystone,* 480 U.S. at 491; *Akins v. United*

*States*, 82 Fed.Cl. 619, 622–23 (2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause" and thus no compensation was due where a federal agency ordered, pursuant to federal law, an inventor to surrender a device later classified by the agency as a machinegun) (quoting *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1153 (Fed. Cir. 2008)).

The Final Rule cites these precedents and correctly notes that the police power exception "does not posit the existence of a 'plenary police power' at the federal level."  *See* 83 FR 66524. Rather, it refers to "the power of the federal government to engage," pursuant to one or more of its enumerated powers, "in activities not unlike those engaged in by the states under their inherent sovereign powers" to protect the public welfare.  *Id. quoting Fla. Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1568 n.17 (Fed. Cir. 1994).

Significantly, the Court of Federal Claims recently dismissed two separate cases seeking takings compensation based on the Final Rule.  In *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 581 (2019), the court held that the Takings Clause is not implicated because the DOJ acted within the narrow confines of the police power when it required the surrender or destruction of all bump stocks.  *Id*. at 582-83.  Similarly, in *McCutchen v. United States*, 145 Fed. Cl. 42 (Fed. Cl. 2019), the court concluded:

> Because the devices have been designated as machineguns under ATF's regulatory authority, they are subject to 18 U.S.C. § 922(o), which makes their possession a criminal offense.  ATF, in the exercise of its police power, directed that owners of the devices must either destroy or abandon them at an ATF office, to avoid prosecution. Because the prohibition on possession involved an exercise of the government's police power, there was no taking within the meaning of the Fifth Amendment.

The court reasoned that requiring "owners to divest themselves of such tools of war is the paradigmatic example of the exercise of the government's police power, which defeats any entitlement to compensation under the Takings Clause." 145 Fed. Cl. At 52.

This Court finds the rationale articulated in *Modern Sportsman* and *McCutchen* persuasive. The Final Rule's prohibition of bump stock devices was triggered by Congress' directive that dangerous machines guns be regulated as part of the effort to fight violent crime. This classification and seizure of contraband is one of the most basic exercises of the police power – it does not implicate the Takings Clause.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED** in its entirety. All pending motions are **TERMINATED** as **MOOT** and the Clerk of Court is **DIRECTED** to enter judgment and to close this case.

**IT IS SO ORDERED.**

**Dated:  September 28, 2021**

**STACI M. YANDLE**
**United States District Court Judge**